Eastern Auto Car Wash, Inc., Appellant, *v.*
Commonwealth of Pennsylvania, Board
of Finance and Revenue, Appellee.

Argued June 6, 1973, before President Judge BowMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Lewis H. Markowitz,* with him *Markowitz, Kagen & Griffith,* for appellant.

*Edward T. Baker,* Deputy Attorney General, for appellee.

OPINION BY JUDGE BLATT, September 20, 1973:

The appellant, Eastern Auto Car Wash, Inc. (Eastern), is the owner and operator of two self-service, coin-operated car washes. Both of these operations are unattended but are visited by Eastern's employees at vari-

ous times each week for the purpose of checking to determine if they are functioning properly, emptying coin changers and coin collection boxes, and replacing any items of equipment requiring change or repair.

In 1967 Eastern's operations were audited by the Bureau of Taxes for Education, for the period from January 5 to October 31, 1965, and this audit resulted in an additional assessment of sales taxes against Eastern in the amount of $764.22, plus interest, pursuant to the Tax Act of 1963 for Education.[1] Eastern filed a petition for reassessment, which was denied by the Sales Tax Board, and this decision was affirmed by the Board of Finance and Revenue. An appeal then taken to the Court of Common Pleas of Dauphin County was later transferred to this Court. The parties have filed a stipulation of facts which we adopt as our findings of fact and incorporate herein by reference. A trial by jury has been waived as provided by the Act of April 22, 1874, P. L. 109, §1, 12 P.S. §688.

The essential question at issue is whether or not the provision of Eastern's self-service car washes for the use of their customers constitutes a "sale at retail" for sales tax purposes.

Section 201(a) of the Tax Act of 1963 for Education, 72 P.S. §3403-201(a), imposed a tax[2] "upon each separate sale at retail as defined herein," and Section 2(j) of the Act listed a series of definitions of "sale at retail." The definition cited by the Sales Tax Board in this case was that contained in Section 2(j)(4) and it read as follows: *"The rendition for a consideration of the service of* repairing, altering, mending, pressing, fitting, dyeing, laundering, drycleaning or *cleaning tangible personal property* or applying or installing tangible

---

[1] Act of March 6, 1956, P. L. (1955) 1228, as amended, 72 P.S. §3403-1 et seq. Repealed by the Act of March 4, 1971, P. L. 6, §280.

[2] At the time in question, the tax imposed was at the rate of five (5) percent.

personal property as a repair or replacement part of other personal property for a consideration, *whether or not the services are performed directly or by means of coin-operated equipment or by any other means,* and whether or not any tangible personal property is transferred in conjunction therewith, except such services as are rendered in the construction, reconstruction, remodeling, repair or maintenance of real estate. . . ." (Emphasis added.) It is argued by Eastern, however, that its operations, if taxable, would have to be covered by the definition of Section 2(j)(3)(i) which reads as follows: "The rendition for a consideration of the *service* of—(i) Washing, cleaning, waxing, polishing or lubricating of motor vehicles of another. . . ." (Emphasis added.) We believe that Eastern's operations are taxable, whichever section may be considered as applicable.

If Section 2(j)(4), which refers to the cleaning of tangible personal property, is applied, as the Board sought to do, it is clear that the decision of our Supreme Court in *Commonwealth v. Morris Half Hour Laundromat,* 442 Pa. 543, 277 A. 2d 148 (1971) would govern. The Court there held that the operation of a self-service coin-operated laundromat, which is an operation very similar to that of the self-service coin-operated car wash here considered, was subject to the Tax Act of 1963 for Education. It held that the term "service" is not restricted to manual service, but that service may be rendered through machines as well as personally.

If Section 2(j)(3)(i) which applies to cleaning motor vehicles should be held to be the properly applicable section, however, the reasoning of the Court in *Morris, supra,* would still appear to be conclusive, for the Court there did not base its decision solely on the special language of Section 2(j)(4), but said, "However, given the prevalence of today's machine technology, it is doubtful that the present ordinary meaning of the term 'service' is restricted to manual service, and in light of the com-

prehensive scheme of taxation provided for by the Tax Act of 1963 for Education we will not infer that the legislation included such a restrictive meaning. Appellant does indeed work for his customers—through his machines. . . ." The Court then, but only then, added that "Section 2(j)(4) expressly contemplates as much by providing broadly that laundry services are taxable 'whether or not . . . performed directly or by means of coin-operated equipment or by any other means. . . ." 442 Pa. at 548, 277 A. 2d at 150. In other words, the Court was properly emphasizing the word "service," which is found in both definitions cited above, and it clearly held that service could be rendered through work or labor done for another either by one's own hands or by any automated extension thereof. It is likely that the Legislature in 1963 knew of and specifically mentioned coin-operated equipment in the case of the laundry operations mentioned in Section 2(j)(4) but had probably not yet heard of, and so did not mention, coin-operated equipment in the case of the motor vehicle operations mentioned in Section 2(j)(3)(i), since the first such operation was not established in this country until November, 1962. This merely reflects the rapidly changing state of technology. It does not necessarily imply that the Legislature deliberately chose to include automated equipment in one definition and to exclude it in the other.

One other question concerns Eastern's method of reporting its taxes during the audit period involved. Eastern reported the tax on its gross car wash sales, while the Board of Finance and Revenue held that the tax should be imposed upon each separate sale. While this point was at issue throughout the case, it was not mentioned by Eastern in its brief before this Court and we will not, therefore, discuss it in detail. We would note, however, that it has been settled by the Supreme Court in *Morris, supra,* which held that the tax should be imposed on each separate sale.

We, therefore, make the following

### Conclusions of Law

1. At the time in question, Section 201(a) of the Tax Act of 1963 for Education, 72 P.S. §3403-201(a), imposed a tax of five (5) percent on each separate sale at retail as defined in the Act.

2. Pursuant to the definition in both Sections 2(j)(3)(i) and 2(j)(4) of the Tax Act of 1963 for Education, 72 P.S. §3403-2(j)(3)(i) and 3403-2(j)(4), the car wash operations of Eastern constitute separate sales at retail.

3. The Commonwealth correctly assessed the sales tax of Eastern for the period January 5, 1965 to October 31, 1965.

### Order

Now, September 20, 1973, the order of November 19, 1968, of the Board of Finance and Revenue is affirmed and judgment is entered in favor of the Commonwealth and against Eastern Auto Car Wash, Inc. in the amount of $764.22, together with any interest allowed by law and with a credit allowed to the said company for such amount, if any, as it has paid on such obligation, unless exceptions be filed hereto within thirty (30) days. The Prothonotary is directed to notify forthwith the parties hereto or their counsel of this decree.